Campbell v. Cothran.

---

## CAMPBELL v. COTHRAN.

*Sheriff — poundage on levy and sale.*

Defendant, an attorney at law, issued execution for $4,328.48, and costs, upon a judgment for that amount. Plaintiff, the sheriff to whom the execution was directed, levied upon property sufficient to satisfy the execution and advertised it for sale. Before sale the judgment was reduced by the court of appeals to $50 and costs, of which defendant notified plaintiff and directed him to collect only the last named amount, which was done.

*Held*, that defendant, as attorney, was liable to plaintiff for poundage.

*Held*, also, that plaintiff was entitled to poundage only upon the amount collected, and not upon the whole amount named on the execution.

MOTION for a new trial on exceptions ordered to be heard at general term in the first instance. The action was brought by the plaintiff, as sheriff of Monroe county, against the defendant, an attorney, to recover poundage upon execution issued for $4,328.48, and costs, upon a judgment for that amount rendered by the superior court of Buffalo. The court of appeals modified the judgment by reducing the same to $50 and costs, in pursuance of which the defendant directed plaintiff to collect only the reduced amount and costs. Property was levied upon and advertised for sale under the original execution, but was not sold, and only the reduced amount was collected. The sheriff claimed poundage on the difference between the original and the modified execution. The judge at the circuit ruled in favor of the plaintiff's claim.

Campbell v. Cothran.

*W. F. Cogswell*, for plaintiff.

I. The sheriff, having levied on property sufficient to satisfy the executions, is entitled to his poundage upon the amount of the executions so issued to him, and is not affected by any arrangement between the parties, or any action of the court affecting the amount to be finally collected on executions.

The provisions of the Revised Statutes (vol. 2, 645, marg. § 38), of the Revised Laws (vol. 2, 77), Revised Laws of 1813 (vol. 2, 19), and the 29th Elizabeth (ch. 4), upon the subject of sheriff's poundage, are substantially alike, and under all four it has been held, both in England and in this State, that the sheriff is entitled to his poundage immediately upon a levy on property sufficient to satisfy the execution.

The language of the Revised Statutes is: "for serving an attachment for the payment of money, or an execution for the collection of money * * * for collecting the sum of two hundred and fifty dollars or less, two cents and five mills per dollar," etc. The language of the Revised Laws was: "*for serving* an execution for or under two hundred and fifty dollars, two cents and four mills per dollar * * * to be taken only for the sum levied." The language of the statute of Elizabeth is: "It shall not be lawful for any sheriff, by reason of his office, to take of any person for serving an execution upon the body or property, more or other consideration than is allowed by the statute, that is to say, twelve pence for every twenty shillings where the sum exceedeth not one hundred pounds; six pence for every twenty shillings over that he should so levy, and extend and deliver in execution, or take the body in execution therefor."

The statute of 1871, Laws of 1871, p. 821, is precisely like the Revised Statutes, except as to the amount it gives the sheriff for his fees.

It was held in *Alchin* v. *Wells*, 5 Term R. 470, where a *fi. fa.* was delivered to a sheriff, who levied upon property sufficient to satisfy the same, and afterward, and before the same was delivered or sold, the parties compromised the judgment, and he was entitled to his poundage upon the full amount of the execution.

It was held in *Hildreth* v. *Ellice*, 1 Cai. 192, where a *fi. fa.* was delivered to the sheriff who levied the same upon land, after which the parties settled the execution by a compromise, that the sheriff was entitled to poundage on the *full amount of the execution.*

In this case *Alchin* v. *Wells* was cited as authority upon the construction of our statutes.

In *Adams* v. *Hopkins*, 5 Johns. 252, where a *ca. sa.* was delivered to a sheriff, who arrested the defendant therein, who was afterward discharged under the act for the relief of imprisoned debtors, it was held, that the sheriff was entitled to recover of the plaintiff's attorney the whole amount of the writ. The opinion of Chief Justice THOMPSON in this case is instructive upon several points, and will be referred to again.

In the case of *Scott* v. *Shaw*, 13 Johns. 378, decided in 1816, under the Revised Laws of 1813, the plaintiff's attorney inadvertently issued a *ca. sa.* when no *fi. fa.* had been previously issued and returned pursuant to the requirements of the statute. The defendant in the *ca. sa.* was discharged from arrest on account of this irregularity. He subsequently confessed a new judgment for the same amount as the former one. Upon this new judgment the *fi. fa.* and *ca. sa.* were regularly issued and defendant arrested. The sheriff claimed full poundage upon both writs. His claim to caption and jail fees on the first was admitted, but the demand of poundage resisted. Held by the court, that he was entitled to poundage upon both writs.

In delivering the opinion SPENCER, J., says: "The allowance of poundage is for the risk incurred, and that risk is in proportion to the amount of the sum to be levied."

In *Bolton* v. *Lawrence*, 9 Wend. 435, two executions on the same judgment were issued, one to the sheriff of New York, the other to the sheriff of Chenango. The sheriff of the latter county advertised several tracts of land.

Before the day of sale the execution issued to the sheriff of New York was collected. It was held that the sheriff of Chenango was entitled to his poundage. This case originated under the Revised Statutes, and it was argued that the change in the verbiage of the statutes had changed the law upon this subject. Mr. Reynolds, *arguendo*, says: "The sheriff of Chenango, *not having collected* any part of the judgment, was not entitled to poundage, the language of the Revised Statutes being, " that for *collecting*, etc., he shall receive, etc., referring to the statute, which is different from the former statute which gave poundage for *serving* an execution, referring to the Revised Laws." This position was overruled by the court. SUTHER-

LAND, J., said: "The Revised Statutes have not altered the law as to the right of sheriffs to poundage, in a case like the present."

The provision on this subject is substantially the same as it was in former statutes, and under them it has uniformly been held since, *Hildreth* v. *Ellice*, 1 Cai. 192, that after levy of an execution the sheriff is entitled to poundage, although he do not sell the property levied upon.

In *Parsons* v. *Bowdoin*, 17 Wend. 14, an execution was issued to the sheriff of Monroe, who was specially directed as to what property to levy upon, which levy was made. The debt was subsequently settled by the parties, and the levy released. The sheriff brought his action for poundage. The defendant proved that the property levied upon was incumbered beyond its value, and the judge at the circuit charged that the sheriff was not entitled to recover poundage.

A new trial was granted, the court holding that the sheriff having been specifically instructed as to what property to levy upon, and having levied accordingly, he was entitled to poundage upon the full amount directed to be levied, citing *Hildreth* v. *Ellice*, and *Bolton* v. *Lawrence*.

But perhaps the case of *Bullin* v. *Anslye & Smith*, 6 Esp. 111, is more critical in point than any of the foregoing cases. That was an action against the defendants as sheriffs of London, for money paid out and expended, brought to recover the sum of £78 under these circumstances: The plaintiffs had recovered judgment against one Emmett, and issued execution, which was levied by the defendants. The execution was in fact irregular, and was set aside and the money levied ordered to be restored to Emmett. The sheriffs paid over the money levied less £78, their poundage. The plaintiff paid the £78 and brought his action against the sheriffs. Upon opening the case, Lord ELLENBOROUGH declared his opinion that the plaintiff had no title to recover. They having regularly levied under the authority of the writ of execution, had nothing to do with the regularity or irregularity of the proceeding, under which the writ had issued * * * The authority of the writ the sheriff could not question, but was bound to obey. He had therefore paid proper obedience to the writ, and the statute had given him certain fees for his trouble, as poundage; he was legally entitled to those fees on account of his *levy*. The plaintiff was accordingly nonsuited.

VOL. I. — 10

It was held in the case of *Earle* v. *Plummer*, 1 Salk. 332, that if an erroneous writ be delivered to the sheriff and he execute it, he shall have his fees though the writ be erroneous. This case seems to be precisely in point.

I respectfully submit that I have shown by these citations, that the twenty-ninth Elizabeth, the Revised Laws, the Revised Laws of 1813, the Revised Statutes and the Statutes of 1871, although differing slightly in their verbiage, are identical in meaning, and that under each of them the sheriff is entitled to his poundage upon the amount of the execution, and the moment that he has levied the same.

It will be observed that the fees are given by the Revised Statutes for "*serving* the execution." If it is claimed that the words in the subsequent part of the section "for collecting," etc., limits the amount, I answer by reference to the case of *Adams* v. *Hopkins*, 5 Johns. 252, where it was held under a statute in the following language (2 R. L. 77): "For serving an execution for or under two hundred and fifty dollars, two cents and four mills per dollar * * * to be taken only for the sum *levied*," that the latter words do not weaken the construction which had theretofore been given to similar acts *for serving, i. e., levying* the execution, and also in *Bolton* v. *Lawrence*, 9 Wend. 435, where the construction contended for was expressly overruled.

The service of an execution which is the thing for which poundage is given, is the levy thereof. There is nothing done by the sheriff after this levy, that can be aptly described by the term *service*.

When the sheriff has made this levy he has done nearly all the work, and incurred all the responsibility that has to be done or incurred in collecting the debt.

The rule for which I have contended is laid down in all the elementary books on this subject. Grah. Pr. 362 ; Crocker on Sheriffs, § 1110.

*George W. Cothran,* defendant in person.

The court erred in declining to direct a verdict for defendant, and also in directing a verdict for the plaintiff.

On all moneys collected on the judgment, the sheriff has received his full compensation.

The only question in the case is, whether he is entitled to fees on

any thing more than on the sum collected. The statute under which the plaintiff claims to recover, provides that "for the following services hereafter done and performed by sheriffs, * * * the following *fees* shall be allowed:

*For serving* an attachment for the payment of money, or *an execution* for the collection of money, * * * for collecting the' sum of $250 or less, three cents per dollar, and for *every dollar collected* more than $250, the sum of two cents." Laws 1871, ch. 415.

What is meant by "serving an execution" for the collection of money? The mandate of the execution is: "We command you that you satisfy said judgment out of the personal property of the said judgment debtor, etc., and return this execution within sixty days after its receipt by you, to the clerk of the superior court of Buffalo."

The indorsement on the execution is: "The sheriff will *levy and collect* the sum of $4,328.58, and his fees." When the sheriff shall have performed the services required of him by the mandate of the execution, he will have *served* the execution. The service of an execution means the collection and payment of the money, and the return of the writ according to its directions. Receiving the execution and entering it in his books by the sheriff and searching for property, is not the service of the execution contemplated, because for those services a distinct fee is provided by the statute. Laws 1871, ch. 415, subd. 4.

What other duties are devolved upon the sheriff after receiving the execution, entering it on his books, and making search for the property? Simply to levy and collect, and pay over the money and return the writ.

Nothing less than this will be a compliance with the execution, and will any less than a full compliance with the mandate of the execution entitle the sheriff to fees? If so, where is the line drawn?

The astounding proposition laid down at the trial was simply that, when a sheriff makes a levy on property, he is entitled to full fees and may maintain an action against the attorney issuing the execution to recover them. If this proposition is true, very few sheriffs will ever assume the risk of selling property if he can demand his fees as soon as he levies. There is absolutely no authority to sustain the ruling at the circuit. On the contrary, as far as the authorities go, they establish a very different rule.

They seem to establish the following rules:

Campbell v. Cothran.

1. Poundage (sheriffs' fees are so called in some of the books) is an incident to the judgment, and can be collected by the sheriff by virtue of his execution only.

2. That no person other than the debtor is liable to the sheriff for his fees by reason of any thing contained in the writ, and if any other party is made liable for his fees, it is by virtue of some act outside and independent of the execution.

3. If after the sheriff has made a levy on sufficient property to make the amount of the judgment, the parties compromise the judgment, he may recover from the execution creditor the amount of his fees.

4. The last proposition proceeds on the principle that, the party having prevented the sheriff from complying with the terms of the execution, as a sheriff cannot collect his fees from the debtor after the judgment has been compromised (*Craft* v. *Merrill*, 14 N. Y. 456), he thereby renders himself liable to pay the sheriff.

Some of the cases place the attorney's liability on the same footing as that of the execution creditor. Without exception, all the cases where the sheriff has been allowed to recover were either compromised after levy was made, or when the sheriff had actually performed all the services required of him by law.

There is no case in any of the books which give the least countenance to the proposition laid down at the circuit. The adjudicated cases are not numerous, and throw little light on the subject. In *Alchin* v. *Wells*, 5 Term (Durnf. and East), 470, after the levy of a *fi. fa.* the parties compromised before the sheriff sold any of the defendant's goods, the sheriff before surrendering possession satisfied himself for his poundage. The plaintiff procured a rule that the sheriff return his writ, and the court held that the sheriff having made his levy was entitled to his fees, and the rule was discharged.

From this case it seems the sheriff was entitled to his fees *from the debtor*, not from the plaintiff or his attorney. In *Hildreth* v. *Ellice*, 1 Cai. 192, it was held by a divided court, where a judgment was compromised by the parties after levy by the sheriff, that the sheriff was entitled to recover the amount of his poundage of the execution creditor.

"Where the plaintiff interposes," says THOMPSON, J., "and a compromise takes place, he is entitled to poundage on the sum realized by the plaintiff or that might have been collected from the property levied on." The force of this case is very much shaken by the able

Campbell v. Cothran.

dissenting opinion of LIVINGSTON, J., who also dissents from the case in 5 Term, *supra.*

*Adams* v. *Hopkins,* 5 Johns. 252, was an action against the attorney to recover poundage, the facts were that the sheriff caused the arrest of the defendant on a *ca. sa.* and detained him in custody until he was discharged under the act for the relief of imprisoned debtors. The court held that the action would lie against the attorney, and that the sheriff was entitled to his poundage. The ground on which he was entitled to his poundage is very clearly stated by the court.

The sheriff, by the statute of Elizabeth and by our act, is to have his fees for *serving an execution.* This service when applied to a *ca. sa.,* according to the provisions of the statute of Elizabeth, evidently means the taking of the body in execution, and this must necessarily be the import of the terms in our act. The sheriff has then *performed* the service of arresting and imprisoning the debtor pursuant to the command of the writ, and has subjected himself to the peril of his escape, and of being answerable for the whole debt. The sheriff having performed his duty, having rendered *all* the service required of him by the command of the writ, was entitled to his fees.

In *Scott* v. *Shaw,* 13 Johns. 378, the sheriff was held entitled to his poundage for executing a *ca. sa.,* notwithstanding the defendant was discharged on the ground of irregularity, no *fi. fa.* having been previously issued. No action was brought but the question was submitted to the court for decision. The sheriff was unable to make his poundage because of the irregular manner in which the *ca. sa.* was issued.

*Bolton* v. *Lawrence,* 9 Wend. 435, simply decides that where executions are issued on the same judgment to sheriffs of different counties, and the money is made by one of them, each sheriff who has made a levy is entitled to his poundage. This case proceeds upon the principle that all the sheriffs, except the one who collected, have been deprived of the power to collect by the act of the plaintiff. It has no bearing on this case.

In *Parsons* v. *Bowdoin,* 17 Wend. 14, by direction of the attorney in the *fi. fa.,* the sheriff levied on specific property which was incumbered to its value, and the attorney having compromised the judgment, it was held that the sheriff could recover his poundage from the attorney.

Here again the judgment was settled. The *nisi prius* case of *Bullen* v. *Ansley,* 6 Esp. 111, simply holds that where the sheriff had made the amount of a *fi. fa.*, which was afterward set aside for irregularity, and the sheriff restored all the money collected but his poundage, the plaintiff having paid the. debtor the amount of the poundage retained by the sheriff, brought action to recover it of the sheriff. *Held*, that the sheriff having made the amount of the· *fi. fa.*, was not responsible for. the irregularity of the writ, and a nonsuit was ordered. The sheriff had served his execution.

It will be seen that none of these cases aid the plaintiff.

Within the rules established by these cases, what is there to base an action on against the defendant ? What act has he done to interfere with the sheriff's right to collect ? Let us see. He issued an execution on a judgment after it had been affirmed at the general term. He furnished the sheriff with a copy of the decision of the court of appeals modifying the judgment, with a notice to facilitate the sheriff in ascertaining the amount remaining to be collected, and he *did nothing else.*

There was no settlement, no compromise, no satisfaction in this case ; what else was done was the act of the defendant in the execution, or the act of the court of appeals. The only error committed was in the court of the last resort in pronouncing its very peculiar decision, which no man, aside from its majority of its judges, ever regarded as good law. To hold this defendant liable is to hold him responsible for the errors of that tribunal, a responsibility which he does not desire to be compelled to bear. The case comes back to the original proposition — when is the execution served ?

II. Upon what principle is the plaintiff entitled to interest. He brings an action to recover for services which he never rendered, and seeks to recover from the defendant that which he never had. The rule of law that will award interest under such circumstances, is the other " twin relic of barbarism."

III. The plaintiff and defendant are officers of this court, and there is no reason why the court should *invent* a rule to punish the one for the benefit of the other, in a case where neither has erred nor been derelict in the performance of his duty.

IV. The defendant having acted merely as an attorney, and the capacity in which he acted being clearly understood by the plaintiff, he is not liable.

It is well settled that the attorney is not liable for referee's fees. *Judson* v. *Gray*, 11 N. Y. 408.

The attention of the court is respectfully called to the argument of Mr. Hill, and the opinion of Judge SELDEN in that case. They will satisfy anybody that the erroneous and anomalous rule laid down in *Adams* v. *Hopkins*, 5 Johns. 252, should be overruled. The statute fixing the sheriff's compensation, already cited, furnishes strong evidence that the legislature did not intend that the attorney should be liable for poundage, as it, by express provision, makes the attorney liable for the fee for receiving and entering an execution. *Expressio unius est exclusio alterius*.

The statute also distinctly provides that the sheriff's poundage shall be collected by virtue of such execution in the same manner as the sum therein directed to be levied. Laws 1871, 821, § 1, subd. 4.

MULLIN, P. J. The plaintiff is sheriff of the county of Monroe, and the defendant an attorney at law.

As attorney for one Walter Tryon, he brought an action in the superior court of Buffalo, against the New York Central Railroad Company, to recover divers penalties alleged to have been incurred by said company, by reason of demanding and receiving from said Tryon a greater amount of fare for traveling on its road than by law it was entitled to demand and receive. Tryon recovered judgment in that action for penalties, illegal fare and costs, $4,328.48. This judgment was duly docketed, and transcript filed in the clerk's office of Monroe county, April 12, 1871. This judgment was affirmed by the general term of the superior court, with costs, which were adjusted at $74.41. On appeal to the court of appeals, the judgment of the superior court was reversed as to all the penalties included in the judgment but one, which plaintiff recovered, together with the costs of the action in the superior court. The defendant issued execution to the sheriff upon said judgment in the superior court, and directed him to collect thereon the sum of $4,328.58, and the sum of $73.09, being costs in the general term, besides interest and his fees. The sheriff received the execution, and, by virtue of it, seized and advertised for sale property of the railroad company sufficient in amount to satisfy the execution and his fees.

Before a sale of the property so levied on, and after a reversal in

part of the judgment by the court of appeals, the defendant noti-
fied the sheriff of the reversal, and directed him to collect on the exe-
cution the amount to which the judgment was reduced by the
court of appeals, together with interest and his fees. The defend-
ant made a motion in the superior court that the sheriff be required
to return the execution satisfied, on being paid the amount to which
the judgment was reduced by the court of appeals, with interest
and poundage on said sum. The court so ordered; the sheriff
having received the amount specified in the order, returned the excu-
tion satisfied.

The plaintiff, as sheriff, brought this action to recover of the
defendant as attorney, in the suit of *Tryon* v. *The N. Y. C. R. R.
Co.*, poundage on the whole amount directed to be collected on
the execution issued by defendant to him, less the amount actually
received from the defendant in the execution. The foregoing facts
were either admitted or proved on the trial. The court was asked
to order a verdict for the defendant, which request was refused, and
defendant's counsel excepted. The court then directed a verdict in
favor of the plaintiff and against the defendant, for the sum of
$1,030.99, to which direction defendant's counsel excepted.

The exceptions were directed to be heard in the first instance
at the general term, and judgment in the mean time was suspended.

It was decided in *Adams* v. *Hopkins*, 5 Johns. 252, that an attor-
ney is liable to a sheriff for his poundage on an execution. The
same thing was again held in *Ousterhout* v. *Day*, 9 Johns. 114; *Trus-
tees of Watertown* v. *Cowen*, 4 Paige, 510; *Judson* v. *Gray*, 1 Kern.
408. As no case holding a different rule is referred to, we must
follow these cases and hold the defendant liable to the sheriff for
his poundage.

By 2 R. L. 19, compensation was allowed a sheriff for serving
an execution, and it was provided that poundage on writs of *fi. fa.*
and all other writs for levying money, should be taken only "*for
the sum levied.*"

2 R. S. (2d ed.) 536, authorized the sheriff to receive for serving
an execution for the collection of money, as follows: For collecting
$250 or less, 2½ cents per dollar, and for every dollar collected more
than $250, 1¼ cents per dollar. The amount of poundage to which
a sheriff is entitled is the same under both statutes, and is measured
by the amount collected on the execution.

If an execution is delivered to a sheriff, requiring him to collect

$10,000, and he actually collects only $1,000, is he to receive poundage on the whole sum named in the process?

He may have levied on property sufficient to satisfy the whole sum, yet, for want of bidders or other cause, no more than $1,000 could be realized from the sale, yet his poundage must be limited to the amount collected.

In the case supposed, the sheriff, by his levy, becomes liable for the whole amount of property levied on, and, if that is the controlling consideration, he would be as much entitled to poundage on the $10,000 as would the plaintiff in this suit. The property levied on may be destroyed by fire or flood without the fault of any person, and, if it should be, would the sheriff be entitled to poundage on the whole amount of the execution by virtue of which the levy was made?

Section 243 of the Code gives, I apprehend, the correct construction of the provision of the Revised Statutes in relation to the poundage to which sheriffs are entitled. It declares that "the sheriff shall be entitled to the same fees and compensation and disbursements under this title" (the title relating to attachments) as are allowed by law for like services by the Revised Statutes; "provided, however, that no poundage or other compensation shall be allowed to the sheriff (except," etc.), "unless a settlement shall be had, or a judgment shall be recovered or collected in whole or in part," in the action in which the attachment issues. "And when a judgment shall have been recovered and collected in part only, the amount of his poundage shall not be estimated on any sum greater than the sum collected on such judgment; and when a settlement shall be had, the amount of his poundage shall not be estimated on any sum greater than the amount at which said settlement is made." It is not to be supposed that the legislature intended to lay down one measure of compensation for executions on judgments in attachment cases, and another for executions in other cases. The provisions of section 243 are so just, and are so fully in accordance with the language of the provisions of the Revised Statutes and the decisions under them, that they should be received as a legislative interpretation of the statutes relating to the fees and poundage of sheriffs.

The courts had held that the sheriff was entitled to his poundage on the amount of an execution after levy, although it might be compromised, or released, or set aside for irregularity. Such a construction

was a liberal one, and was necessary to enable the officer to get compensation for his services, and as there was no other standard ·by which to regulate his compensation, the amount of the execution was necessarily adopted. These cases do not affect the construction to be given to the provisions of the Revised Statutes, as to the measure of compensation, where the sheriff has actually collected money on an execution.

For these reasons, I am of the opinion the judgment is wrong, and should be set aside and a new trial ordered, costs to abide the event.